# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| BROOKS HOME CARE SERVICES, INC. § § § | |
| v. § | CIVIL ACTION NO. 3:23-CV-0477-S |
| § | |
| XAVIER BECERRA, Secretary, United States Department of Health and Human Services § § § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Xavier Becerra's Motion to Dismiss Plaintiff's Amended Complaint ("Motion") [ECF No. 34]. The Court has reviewed the Motion, Appendix in Support of Xavier Becerra's Motion to Dismiss Plaintiff's Amended Complaint ("Appendix") [ECF No. 35], Plaintiff's Response to Defendant's Motion to Dismiss ("Response") [ECF No. 38], Defendant's Reply to Support Motion to Dismiss [ECF No. 44], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

### I. BACKGROUND

Plaintiff Brooks Home Care Services, Inc., provides home health services to Medicare beneficiaries in Dallas, Texas, and the surrounding area. Pl.'s First Am. Compl. ("Complaint") [ECF No. 24] ¶ 10. Medicare is a national health insurance program established through the Social Security Amendments of 1965 and is managed by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency within the United States Department of Health and Human Services ("HHS"). *Id.* ¶¶ 11, 15. As a Medicare provider, Plaintiff submits claims for payment to Palmetto GBA, a Medicare Administrative Contractor. *Id.* ¶ 17. Those claims are subject to review by a Unified Program Integrity Contractor ("UPIC") for suspected fraud, waste, abuse, and improper payments. *Id.*

On February 24, 2022, the UPIC Qlarant issued a notice of suspension of Medicare payments to Plaintiff pursuant to 42 C.F.R. § 405.371(a)(2). *Id.* ¶ 36. According to Qlarant, CMS determined that there was a "credible allegation of fraud" related to Plaintiff's services billed to Medicare and suspended all Medicare payments to Plaintiff. *Id.* ¶¶ 36-40. Plaintiff filed a rebuttal statement with Qlarant on March 7, 2022, which Qlarant found did not justify terminating the suspension. *Id.* ¶¶ 52-53. Plaintiff filed a supplemental rebuttal statement with Qlarant on August 1, 2022, which Qlarant did not respond to. *Id.* ¶¶ 54, 63.

On January 24, 2023, Qlarant notified Plaintiff that it had "received Medicare payments in error, which has resulted in an extrapolated overpayment of $746.757.75 for the universe of claims with paid dates from April 20, 2019[,] through April 19, 2022." *Id.* ¶ 66. Subsequently, on January 30, 2023, Palmetto GBA issued an initial request regarding the overpayment which included a notice of Plaintiff's right to appeal. *Id.* ¶ 67. According to Plaintiff, Qlarant had been aware of the overpayment since August 15, 2022, when it first prepared an overpayment report. *Id.* ¶ 68.

Plaintiff filed suit regarding the February 2022 suspension. *See id.* ¶¶ 2-3. Specifically, Plaintiff alleges that Defendant Xavier Becerra, in his capacity as Secretary of HHS, has illegally suspended Medicare payments without the opportunity to dispute or contest the suspension because it is not considered an "initial determination" which can be appealed. *See id.* ¶¶ 1-2, 70. Plaintiff further claims that Defendant "violated 42 C.F.R. § 405.372(c) by delaying over 150 days to lift the Medicare payment suspension[.]" *Id.* ¶¶ 7-8, 69. Plaintiff brings claims for violation of the Takings Clause of the Fifth Amendment, violation of its due process, violation of its patients' due process rights and access to Medicare, arbitrary and capricious actions by Defendant, and ultra vires withholding of Medicare payments. *Id.* ¶¶ 71-111. Plaintiff also requests a preliminary

2

injunction, permanent injunction, and declaratory relief. *Id.* ¶¶ 112-20. Defendant moves to dismiss based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Mot. 1-2. Because the Court finds that it lacks subject matter jurisdiction, it does not reach Defendant's 12(b)(6) arguments.[1]

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *La. Real Est. Appraisers Bd. v. Fed. Trade Comm'n*, 917 F.3d 389, 391 (5th Cir. 2019) (quoting *Texas v. Travis Cnty.*, 910 F.3d 809, 811 (5th Cir. 2018)). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court to hear a case. The district court may dismiss for lack of subject matter jurisdiction based on the complaint alone. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The court must accept all factual allegations in the complaint as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Williamson v. Tucker*,

---

[1] "A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction [is] considered by the court before any other challenge because 'the court must find jurisdiction before determining the validity of a claim.'" *Sharpe v. Roman Cath. Diocese of Dall.*, No. CIV. A. 3:02-CV-0552-G, 2002 WL 31165987, at *3 (N.D. Tex. Sept. 27, 2002) (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994)), *aff'd*, 71 F. App'x 380 (5th Cir. 2003). "When a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim." *Pillar Panama, S.A. v. DeLape*, 326 F. App'x 740 (5th Cir. 2009) (quoting *Stanley v. CIA*, 639 F.2d 1146, 1157 (5th Cir. Unit B March 1981)).

3

645 F.2d 404, 412 (5th Cir. 1981)). If the court determines that it lacks subject matter jurisdiction, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

### III. ANALYSIS

When dealing with claims "arising under" the Medicare Act, federal courts only have jurisdiction over a "final decision" of HHS. *Fam. Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018) (citing 42 U.S.C. § 405(g)-(h)[2]). "A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claims is in the Medicare Act." *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (quoting *Heckler v. Ringer*, 466 U.S. 602, 606 (1984)). Ordinarily, a provider may only file suit in a district court after exhausting its administrative remedies. *Fam. Rehab.*, 886 F.3d at 500 n.4 (citations omitted). This means a provider must either (1) satisfy all four stages of administrative appeal and receive a decision from the Medicare Appeals Council ("Council"), or (2) escalate its claim to the Council and wait 180 days for the Council to act or fail to act. *Id.* at 500-01.

It is undisputed that Plaintiff's claims—which challenge a Medicare suspension as a Medicare provider—arise under the Medicare Act. *See* Mot. 1; Resp. 1, 5. Therefore, the Court considers whether Plaintiff exhausted its administrative remedies. Plaintiff does not allege that it exhausted administrative remedies by receiving a decision from the Council or waiting 180 days after escalating its claim to the Council. *See* Compl. ¶ 70.[3] Instead, Plaintiff invokes two exceptions to the administrative exhaustion requirement. Plaintiff argues that the Court has subject matter jurisdiction under the collateral claim exception and the "no review at all" exception. Resp. 5-10.

---

[2] "Although § 405(g) is a provision of the Social Security Act, it has been made applicable to Medicare by 42 U.S.C. § 1395ff(b)(1)(A)." *Fam. Rehab.*, 886 F.3d at 500 n.4 (citations omitted).

[3] Plaintiff argues that the exhaustion requirement is "excused" because it has been deprived of an administrative process. *See* Compl. ¶ 70; *see also* Resp. 2. Plaintiff only asserts two bases for jurisdiction, neither of which require exhaustion. Therefore, the Court need not address this argument.

4

### *A. Collateral Claim Exception*

Plaintiff argues that the Court has subject matter jurisdiction under the collateral claim exception established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Compl. ¶ 12; Resp. 5-8. In *Eldridge*, the Court held that "jurisdiction may lie over claims (a) that are 'entirely collateral' to a substantive agency decision and (b) for which 'full relief cannot be obtained at a postdeprivation hearing.'" *Fam. Rehab.*, 886 F.3d at 501 (quoting *Eldridge*, 424 U.S. at 330-32). A claim is not collateral if it requires the court to "immerse itself" in the substance of the underlying Medicare claim, requires the court to demand a "factual determination" as to the application of the Medicare Act, or if it seeks relief that would be "'administrative,' i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process." *Id.* (citations omitted). Put another way, "[i]f the court must examine the merits of the underlying dispute, delve into the statue and regulations, or make independent judgments as to plaintiffs' eligibility under a statute, the claim is not collateral." *Id.* at 503 (citations omitted). A plaintiff establishes that full relief cannot be obtained at a postdeprivation hearing if it "'raise[s] at least a colorable claim' that erroneous recoupment will 'damage [it] in a way not recompensable through retroactive payments.'" *Id.* at 504 (second alteration in original) (quoting *Eldridge*, 424 U.S. at 331).

As to the first *Eldridge* element, the Court concludes that Plaintiff's claims are not collateral to a substantive agency decision for two reasons. First, Plaintiff seeks substantive relief in the form of monetary repayment. Plaintiff asks the Court to order Defendant to "reimburse [it] for its services (including those previously suspended) and do so until the government provides a hearing[.]". Compl. ¶ 8. In fact, each of Plaintiff's claims request relief related to the payments Defendant has withheld. Claim 1 seeks compensatory damages to "justly compensate" for

payments withheld. *Id.* ¶ 122(a). Claims 2 through 4 each request injunctive relief requiring Defendant to "temporarily rescind the Medicare payment suspension" until Defendant holds a hearing and issues a "decision in conformance with constitutionally required procedures." *Id.* ¶¶ 92, 99, 106, 111. Plaintiff clarifies in its Response that temporarily rescinding the suspension would include "the return of [Plaintiff's] earned Medicare payments illegally taken after the suspension was terminated." Resp. 4-5; *see also id.* at 7 ("Again, Plaintiff seeks the return of its illegally confiscated property."). "Although [Plaintiff] sues for money damages rather than Medicare benefits, the money damages [it] seeks would compensate [it] for [Defendant's] premature recoupment[.]" *Griego v. Leavitt*, No. CIV. A. 3:07-CV-1708-D, 2008 WL 2200052, at *10 (N.D. Tex. May 16, 2008) (citation omitted). Plaintiff's requests for money are thus "an indirect suit for Medicare benefits" and are not collateral. *Id.*

Plaintiff's attempt to frame its requests as not substantive is unpersuasive. Plaintiff argues that its claims are about procedural and constitutional issues since it "does not seek an 'award of benefits.'" Resp. 7 (quoting *Heckler*, 466 U.S. at 614). However, Plaintiff seeks "essentially substantive relief" because, as discussed above, each of Plaintiff's claims relate to abating a Medicare suspension and reimbursing invoices submitted during the suspension. *Fam. Rehab.*, 886 F.3d at 502-03 (citation omitted). If the Court ruled in Plaintiff's favor, Defendant would have to "reimburse [Plaintiff] for its services (including those previously suspended)." Compl. ¶ 8. "Although Plaintiff has framed [its] claim[s] in constitutional terms by alleging a denial of appeal rights[,] . . . it essentially seeks to prevent improper recoupment and suspension of its Medicare payments, which is clearly an administrative remedy." *Citadel Healthcare Servs. Inc. v. Sebelius*, No. 3:10-CV-1077-BH, 2010 WL 5101389, at *4 (N.D. Tex. Dec. 8, 2010) (citation omitted); *see also Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999)

(finding a claim framed as constitutional that seeks compensatory damages and the termination of a suspension of Medicare payments as "unquestionably administrative in nature").

Plaintiff's attempt to compare itself to *Eldridge* and *Family Rehabilitation* is also unavailing. Plaintiff contends that its claims are collateral because, like the plaintiffs in those cases, it "assert[s] a right to [a] hearing before its payments are suspended." Resp. 8. However, Plaintiff's suspension has already occurred. *See* Compl. ¶¶ 1-7. Unlike the plaintiffs in *Eldridge* and *Family Rehabilitation*, which sought "only a hearing before the recoupment of its Medicare services," *Fam. Rehab.*, 886 F.3d at 504, Plaintiff here seeks both a hearing and "the return of its illegally confiscated property," Resp. 7. Plaintiff's claims are akin to those in *Heckler*, which "unlike *Eldridge* . . . sought a declaration that HHS's policy was unlawful and that certain claims were reimbursable under the Medicare Act." *Fam. Rehab.*, 886 F.3d at 502 (citing *Heckler*, 466 U.S. at 614). Plaintiff's procedural claims are therefore "inextricably intertwined" with its claim for benefits and not collateral. *Heckler*, 466 U.S. at 614.

Second, Plaintiff's claims would require the Court to delve into Medicare statutes and regulations as well as the merits of Defendant's suspension of Plaintiff. Defendant suspended Plaintiff's benefits on suspicion of fraud. Compl. ¶¶ 36-39. Plaintiff counters that such benefits were "earned," *id.* ¶ 1, and that Defendant's withholding of payment is "illegal" and "*ultra vires*,"[4] *see id.* ¶¶ 8, 12-13, 70, 107-111. Plaintiff dedicates almost four full pages of the Complaint to why there was no fraud, *see id.* ¶¶ 54-61. Furthermore, Plaintiff seeks relief related to specific Medicare regulations. According to Plaintiff, Defendant violated 42 C.F.R. § 405.372(c) by "arbitrarily delay[ing] terminating the sanction[,]" *id.* ¶ 7, and it was "a clear abuse of discretion" for CMS

---

[4] The term ultra vires means "beyond the powers." *Fontenot v. City of Houston*, No. 4:12-CV-3503, 2014 WL 3891682, at *4 (S.D. Tex. Aug. 7, 2014) (citing BLACK'S LAW DICTIONARY 1662 (9th ed. 2009), *aff'd*, 647 F. App'x 402 (5th Cir. 2016).

7

not to exercise the good cause exception to suspension under 42 C.F.R. § 405.371(b)(1)(ii),[5] *id.* ¶ 51. Each of these disputes are central to Plaintiff's claims and concern Medicare regulations about valid invoices and suspension protocol. Accordingly, for the Court to fully address Plaintiff's claims that its earned payments were improperly withheld the Court would "necessarily have to immerse itself in [Medicare] regulations and make a factual determination as to whether [Plaintiff] was actually in compliance." *Affiliated Pro. Home Health*, 164 F.3d at 285-86; *see also Citadel*, 2010 WL 5101389, at *4 (finding a plaintiff's claims that its constitutional rights were violated through improper enforcement of Medicare regulations would necessarily lead the court to immerse itself in those regulations and make a factual determination regarding plaintiff's compliance with the same).[6]

### B. No Review at All

Plaintiff relies on *Shalala v. Illinois Council on Long Term Care, Inc.*, to assert that this Court has jurisdiction because Section 405 "would not simply channel review through the agency[] but would mean no review at all." 529 U.S. 1, 19 (2000); *see* Compl. ¶ 13 (quoting *Ill. Council*, 529 U.S. at 19); Resp. 5, 8-10. As part of this argument, Plaintiff also claims Section 405(g) jurisdiction through 42 U.S.C. §§ 1395ii and 1395ff(b). Compl. ¶ 13.

Neither Sections 1395ii nor 1395ff(b) establish subject matter jurisdiction. Section 1395ii applies select subsections of Section 405 to the Medicare Act, which are not at issue here. *Am. Med. Hospice Care, LLC v. Azar*, No. 5:20-CV-757 DAE, 2020 WL 9814144, at *7 (W.D. Tex. Dec. 9, 2020). "Notably, Congress did not use § 1395ii to apply to subsection (g) [of Section 405],

---

[5] Pursuant to Medicare regulations concerning suspension protocol, CMS may find that good cause exists not to suspend a provider's payments where, among other things, beneficiary access to services would be "so jeopardized by a payment suspension" as to cause a "danger to life or health." 42 C.F.R. § 405.371(b)(1)(ii).

[6] Because the Court concludes that the first *Eldridge* element is not satisfied it does not reach the second.

which provides judicial review to the Medicare Act." *Id.* Therefore, Plaintiff cannot establish jurisdiction through Section 1395ii. Similarly, Subsection 1395ff(b) concerns appeal rights of an initial determination. *Id.* at 6 (citation omitted). Because Plaintiff does not allege receiving an initial determination,[7] it cannot establish subject matter jurisdiction under this section as well.

As to the "no review at all" exception, federal question jurisdiction is available under 28 U.S.C. § 1331 when going through the Section 405 appeals process "would not simply channel review through the agency[] but would mean no review at all." *Fam. Rehab.*, 886 F.3d at 501, 504 (quoting *Ill. Council*, 529 U.S. at 17, 19). This "narrow" exception is only available when going through the agency would result in "*complete* preclusion of judicial review." *Id.* at 504-05 (quoting *Ill. Council*, 529 U.S. at 23). Therefore, a plaintiff must show either that its claim "administratively is 'a legal impossibility'" or that it faces "a serious practical roadblock to having [its] claims reviewed in any capacity, administratively or judicially." *Id.* at 505 (alteration in original) (quoting *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 655, 659 (5th Cir. 2012)).

Plaintiff has not shown that it cannot have its claims reviewed, either practically or legally. Administrative review is available for Medicare payments that are withheld subject to an overpayment determination, as is the case here. CMS suspended Plaintiff's payments under 42 C.F.R. § 405.372(a)(2) due to a credible allegation of fraud. Compl. ¶¶ 36-39. In the January 24, 2023, letter regarding Plaintiff's suspension, Qlarant informed Plaintiff that CMS had discovered overpayments and that Palmetto GBA would issue an overpayment demand letter. *Id.*

---

[7] As discussed below, Plaintiff received overpayment notices that qualify as initial determinations. However, Section 1395ff(b) only gives a court jurisdiction over those initial determinations after a Section 405(g) hearing has been held and HHS has issued a final decision, neither of which is alleged to have happened. *See* 42 U.S.C. § 1395ff(b)(1)(A).

9

¶ 66; App. 009.[8] Plaintiff was issued an overpayment demand letter on January 30, 2023. Compl. ¶ 67; *see also* App. 010-016. The overpayment determination counts as an "initial determination" that "triggers the multi-step administrative appeals process for a provider . . . to follow if it is dissatisfied with the initial overpayment determination." *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656, 661 (E.D. Tex. 2019) (citing 42 C.F.R. § 405.904(a)(2)); *see also* App. 013 ("If you disagree with this overpayment decision, you may file an appeal."). Only once Plaintiff receives a decision from the overpayment appeals process can it seek review in federal court. *True Health Diagnostics*, 392 F. Supp. 3d at 661 (citing 42 U.S.C. § 1395ff(b)(1)(A); 42 C.F.R. § 405.1136; 42 C.F.R. § 405.1130). Therefore, Plaintiff has not demonstrated complete preclusion of judicial review.

Plaintiff further contends that appeals for overpayments are irrelevant since its challenge is to the Medicare payment suspension itself, "which [was] imposed without a right to a hearing or administrative appeal." Resp. 10; *see also id.* at 3 ("Contrary to HHS's contentions, the administrative process and right to challenge the overpayment urged by the government does not afford Plaintiff an opportunity to challenge the wrongs at issue in this case."); Compl. ¶ 2 (noting that suspensions are not considered initial determinations for purposes of appeal rights). However, "[t]he fact that the agency might not provide a hearing for that *particular contention*, or may lack the power to provide one . . . is beside the point because it is the 'action' arising under the Medicare Act that must be channeled through the agency." *Ill. Council*, 529 U.S. at 23 (citations omitted).

---

[8] A court may consider documents outside the pleadings that are attached to the motion to dismiss, referred to in the complaint, and central to the plaintiff's claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Defendant attached the January 24, 2023, letter from Qlarant to the Motion, as well as the January 30, 2023, overpayment demand letter. *See* App. Because these documents are referenced in the Complaint and are central to Plaintiff's claim that Medicare payments were improperly withheld, the Court considers them in evaluating the Motion.

As explained above, Plaintiff was subject to an overpayment determination, which has its own appeals process. Plaintiff acknowledges this, explaining that "the crux of the matter is whether HHS has illegally taken Plaintiff's property and its 'approved' Medicare payments that ultimately will be 'applied to reduce or eliminate any overpayment determined by the Medicare contractor.'" Resp. 7 (citations omitted); *see also id.* at 1 ("[T]he administrative process provides no remedy to the illegal confiscation of Plaintiff's earned Medicare payments that were withheld to offset an alleged Medicare overpayment."). Once Plaintiff exhausts the administrative appeals process, it may bring its claims—including "any statutory or constitutional contention that the agency does not, or cannot, decide"—before the court. *Ill. Council*, 529 U.S. at 23-24 (citations omitted). Because Plaintiff has not demonstrated that channeling review through the agency would mean no review at all, the "no review at all" exception does not apply. *See Arthritis Treatment of Tex., PLLC v. Azar*, No. 3:16-CV-3470-S, 2018 WL 6592664, at *6. (N.D. Tex. Dec. 14, 2018).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Xavier Becerra's Motion to Dismiss Plaintiff's Amended Complaint. Because the Court lacks subject matter jurisdiction, Plaintiff Brooks Home Care Services, Inc.'s claims are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

SIGNED March 29, 2024.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**